IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

FALIPAE MONTEZ HENDERSON,    ) Civil Action No. 3:06-1425-TLW-JRM
    )
        Plaintiff,    )
    )
        vs.    )
    )
DALE GORDINEER, M.D. OF THE    )
GREENWOOD COUNTY DETENTION    )
CENTER; RHUDINA HUDSON, L.P.N. OF THE    )
GREENWOOD COUNTY DETENTION    )
CENTER; SHARON MIDDLETON, CPT. OF    )
THE GREENWOOD COUNTY DETENTION    )
CENTER; CHRISTOPHER ROONEY, CPL., OF    )
THE GREENWOOD COUNTY DETENTION    )
CENTER; AND JOHN DOE, OFC. WALKER, OF )
THE GREENWOOD COUNTY DETENTION    )
CENTER,    )
    ) **<u>REPORT AND RECOMMENDATION</u>**
        Defendants.    )
    )

This action was filed by Plaintiff on May 9, 2006.[1]  At the time of the alleged incidents, he was housed at the Greenwood County Detention Center ("GCDC").  Plaintiff is currently incarcerated at the McCormick Correctional Institution of the South Carolina Department of Corrections.  Defendants are Dr. Dale Gordineer ("Dr. Gordineer"), Nurse Rhudina Hudson ("Hudson"), Captain Sharon Middleton ("Middleton"), Christopher Rooney ("Rooney"), and Officer Walker ("Walker"). On July 12, 2006, Dr. Gordineer filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on July 14, 2006, pursuant to Roseboro v.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC.  Because these are dispositive motions, the report and recommendation is entered for review by the court.

Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed responses on August 16, October 27, and December 6, 2006 and Dr. Gordineer filed responses on August 23, 2006 and February 8, 2007. Defendants Middleton, Rooney, and Walker filed a motion for summary judgment on October 16, 2006. A second Roseboro order was filed on October 17, 2006. Plaintiff filed responses on November 22 and 27, 2006. On December 14, 2006, Defendant Hudson filed a motion to dismiss for lack of jurisdiction or in the alternative for summary judgment. A third Roseboro order was issued on December 18, 2006. Plaintiff filed a response on February 2, 2007.[2]

## MOTIONS FOR SUMMARY JUDGMENT

Plaintiff's allegations center on a dermatological problem he alleges he experienced while a detainee at GCDC. He claims that he suffered from itching all over his body and appears to claim that Defendants were deliberately indifferent to this medical need. Plaintiff also asserts claims about an incident which occurred on November 16, 2005. On that date, Plaintiff claims that he was distressed because of his medical situation and snatched pills from Hudson and chewed them up and swallowed them. He alleges that Defendant Walker tased him once after he ran away from officers and tased him a second time when he refused to spit out the pills. Plaintiff also may be attempting to assert a claim concerning his living conditions because he was placed in a stripped cell for seven days following the pill incident.

---

[2]In preparing this report and recommendation, the undersigned has also considered Plaintiff's affidavit and attached materials filed on June 29, 2006 (Doc. 19).

Defendant Dr. Gordineer contends that the is entitled to summary judgment because: (1) the matters asserted by Plaintiff do not fall within the scope of 42 U.S.C. § 1983; (2) Dr. Gordineer is entitled to qualified immunity; (3) Plaintiff failed to allege federal court jurisdiction; (4) Plaintiff's complaint lacks an arguable basis in law and should be dismissed as frivolous under 28 U.S.C. § 1915(e); and (5) any action pursuant to State law against Dr. Gordineer should be dismissed because Plaintiff failed to provide expert testimony. Defendants Middleton, Rooney, and Walker contend that they are entitled to summary judgment because: (1) Plaintiff fails to prove an excessive force claim because the use of the taser to subdue Plaintiff was a reasonable and constitutional use of force under the circumstances; (2) Plaintiff fails to prove an excessive force claim because any injuries were de minimis as a matter of law; (3) Plaintiff fails to state a cause of action as to his medical care because there was no deliberate indifference to any serious medical needs; (4) Plaintiff has not exhausted his administrative remedies[3] pursuant to the prison litigation reform act and fails

---

[3]It is recommended that the motion for summary judgment of Defendants Middleton, Rooney, and Walker be granted on the merits, as discussed below. Alternatively, it is recommended that this action be dismissed because Plaintiff failed to exhaust his administrative remedies. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

Defendant Middleton states that she has reviewed Plaintiff's grievance file and there was only one grievance submitted by Plaintiff with respect to the tasing incident. She states that the grievance was handled informally in that the shift sergeant discussed the subject of the grievance with Plaintiff. Middleton states that if an inmate is not satisfied with the initial response to his grievance, the policy allows the inmate to submit a grievance appeal form and the appeal is then addressed by the Jail Administrator. She states that it does not appear that Plaintiff ever submitted the grievance appeal. Middleton Aff.

to assert an Eighth Amendment claim based on living conditions; and (5) these Defendants are entitled to qualified immunity.

     1.    <u>Medical Claims</u>

Plaintiff appears to allege that Defendants were deliberately indifferent to his medical needs after he swallowed some pills and to his dermatological needs.  Dr. Gordineer contends that Plaintiff fails to show that he had a "serious" medical need to which Dr. Gordineer was deliberately indifferent.  Defendant Middleton contends that Plaintiff fails to show that she was deliberately indifferent to any of Plaintiff's serious medical needs.  She states that at all relevant times alleged in Plaintiff's Complaint, the Greenwood County Sheriff's Department contracted with Southeastern Service Group, Inc. to provide medical personnel for the provision of in-house medical care for inmates at the GCDC.  Middleton contends that she completely relied on the decisions of the medical personnel regarding Plaintiff's medical care and treatment and did not interfere or maintain substantive opinions as to medical-related issues.  Middleton Aff.

Dr. Gordineer states that he visits the GCDC once a week to treat inmates who need medical care.  He first examined Plaintiff on September 7, 2005, at which time Plaintiff complained about elevated blood pressure and reported that he had previously taken blood pressure medications, but had not taken the medications in the past four years. Plaintiff's blood pressure was elevated at 150/155 and Dr. Gordineer prescribed HCTZ to control Plaintiff's blood pressure.  Dr. Gordineer states that Plaintiff made no complaints as to any type of skin condition at that time.  Later, Dr. Gordineer gave a verbal order to add Clonidine to help control Plaintiff's blood pressure.  He next examined Plaintiff on October 26, 2006, at which time Plaintiff's blood pressure was still elevated at 136/104.  He continued Plaintiff on HCTZ and increased Plaintiff's dosage of Clonidine.  Plaintiff

made no complaints to Dr. Gordineer about any skin condition on that date. Dr. Gordineer next examined Plaintiff on November 16, 2005, at which time Plaintiff complained of skin itching. He noted that Plaintiff appeared to have dry skin and states that Plaintiff did not have any type of rash, eczema, or alopecia. On November 16, 2005, Plaintiff asked Dr. Gordineer if he could see a specialist for skin itching and a bowel problem that Plaintiff claimed had been a continuing problem for three years. Dr. Gordineer told Plaintiff that he did not think the skin problem warranted sending Plaintiff to a specialist at that time. He noted no signs of redness or scratching that would indicate Plaintiff's skin had been itching and saw no evidence of any type of abnormal hair loss.

Dr. Gordineer states that he next saw Plaintiff on November 23, 2005, at which time Plaintiff had been on a suicide watch. He spoke with the jail administrator and nurse to gain an understanding of Plaintiff's actions between November 16 and 23, 2005; spoke extensively with Plaintiff about his behavior in order to help determine Plaintiff's state of mind; determined Plaintiff was in a clear frame of mind and was lucid in his demeanor and speak; noted that Plaintiff voiced no intention to commit suicide or self harm; and thought that Plaintiff could be removed from suicide watch at that time. Dr. Gordineer states that Plaintiff made no complaints of itching or any type of skin condition on that date.

On February 16, 2006, Dr. Gordineer noted that Plaintiff's blood pressure was still slightly elevated at 144/92 and prescribed another medication to control Plaintiff's blood pressure. He states that Plaintiff did not complain of a skin problem at that time. On March 30, 2006, Plaintiff told Dr. Gordineer that he wanted to be sent to a dermatologist. Dr. Gordineer states that he found no skin rashes, signs of redness or scratching, or signs or symptoms of excessive hair loss. He told Plaintiff

that he did not believe Plaintiff needed a referral to a dermatologist and that if Plaintiff wished to be sent to a dermatologist and personally pay for the visit Plaintiff would be allowed to do so.

Dr. Gordineer states that he received a letter from Plaintiff on April 4, 2006, dated March 27, 2006, in which Plaintiff complained that he was not receiving appropriate medical care and that Dr. Gordineer had not explained the skin conditions of eczema and alopecia. Dr. Gordineer states that he did recall speaking with Plaintiff and informing Plaintiff that he did not feel it was necessary to explain the conditions of eczema and alopecia because Plaintiff did not have those conditions. After receiving the letter, Dr. Gordineer examined Plaintiff and noted that he saw no symptoms of a skin condition which required treatment. He did not treat Plaintiff after that time. Dr. Gordineer states that he learned that Plaintiff was seen by a local dermatologist (Dr. Grover Henderson) on May 9, 2006, who prescribed a shampoo and a lotion. Dr. Henderson told Dr. Gordineer that Plaintiff had a very mild case of seborrheic dermatitis. Dr. Gordineer states that seborrheic dermatitis is the formal term for dry skin. Gordineer Aff.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[4]  The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the
> authorities fail to do so, those needs will not be met.

* * * * * * *

_____

[4]Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983).  However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment."  Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994).  The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official

knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. First, he fails to show that his skin condition was a "serious" medical need. On November 16, 2005, Dr. Gordineer noted that Plaintiff merely had dry skin. Dr. Gordineer noted no skin rashes, signs of redness or scratching, or signs or symptoms of excessive hair loss on March 30, 2006. Gordineer Aff. The dermatologist who examined Plaintiff outside of GCDC merely diagnosed seborrheic dermatologist and prescribed medication (Dove DML lotion and a shampoo) for Plaintiff's condition. See Gordineer Aff. and Dr. Henderson's Billing Record (Attachment to Plaintiff's Motion to Amend Response to Summary Judgment- Doc. 42). See, e.g., Williams v. Tomlin, 191 F.3d 454 (6th Cir. 1999)(prisoner's complaints of a burning sensation and bleeding after applying medicated skin cream to his face was not a serious medical need where nurse noted that the prisoner had no "blistering redness," but merely a few patches of dry skin).

8

Second, Plaintiff fails to show that Defendants were deliberately indifferent to his medical needs.  In his Complaint, Plaintiff writes that he was given all the skin formulas available at the GCDC.  He admits that Dr. Gordineer examined him and told him that his skin condition was "un-urgent."  See Swindle v. Supple, 2005 WL 267725 (S.D.N.Y. 2005)(no deliberate indifference where prisoner's complaints of calluses and dry, chapped, itching and cracked skin affecting his arms, legs and torso, were treated by prison physicians who prescribed callus pads and over-the-counter skin moisturizer and determined it was not necessary to refer prisoner to a dermatologist or podiatrist).  Plaintiff also admits that Hudson checked on him after he tried to take another inmate's medication and she assessed that he would be "o.k."  Middleton states that she relied on the evaluation of medical staff regarding Plaintiff's care and treatment.  See Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  She states that the first communication received by GCDC with respect to Plaintiff's skin complaints was his letter dated March 27, 2006, to which she advised Plaintiff (on March 31, 2006) that GCDC would accommodate his request for transportation to a local doctor's office, but would not pay for the visit based on Dr. Gordineer's opinion that Plaintiff's complaints were not life threatening.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).  The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary.  See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994).  A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation.  See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986).  Although Plaintiff believes that he should

9

have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

To the extent that Plaintiff claims he suffered psychological damage from hair loss, his claim also fails.  There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims.  See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989).  The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[5]

42 U.S.C. § 1997e(e).

2.    Excessive Force

It is unclear, but Plaintiff may be attempting to assert an excessive force claim as to the tasing incident.  Defendants Middleton, Rooney, and Walker contend they are entitled to summary judgment because the use of the taser to subdue Plaintiff was a reasonable and constitutional use of force under the circumstances and in light of the alternatives available and because Plaintiff's injuries, if any, were de minimis.

Middleton states that as Walker was assisting Hudson in distributing medication, Plaintiff snatched a bottle of medication and poured pills in his mouth while running. Walker ran after

---

[5]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

Plaintiff and gave three commands for Plaintiff to stop or he would shot Plaintiff with the taser, but Plaintiff kept running.  Walker tased Plaintiff and commanded Plaintiff to spit out all the pills, Plaintiff responded that he had none left in his mouth, Plaintiff was handcuffed, the taser probes were removed, and Plaintiff was taken for medical evaluation.  Middleton Aff.; see also Walker Statement (Ex. A to Middleton Aff.).  The GCDC Taser Report indicates that the taser was fired only one time for one five second cycle, the prongs were removed at the scene, Plaintiff was medically examined, and there was no injury from the taser.  Taser Report (Ex. A to Middleton Aff.).

The Due Process Clause protects a pretrial detainee from "'the use of excessive force that amounts to punishment.'"  United States v. Cobb, 905 F.2d 784, 788 (4th Cir. 1990)(quoting Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989)), cert. denied, 498 U.S. 1049 (1991).  In Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994 (en banc), cert. denied, 513 U.S. 1114 (1995), the Fourth Circuit held that "absent the most extraordinary circumstances" excessive force claims do not lie where the injury is de minimis.  Although Norman concerned a convicted prisoner (analyzing claims under the Eighth Amendment) rather than a pretrial detainee, its de minimis standard may also be applicable to pretrial detainees.  Riley v. Dorton; 115 F.3d 1159 (4th Cir. 1997)(holding that a purely de minimis level of injury does not constitute the kind of excessive force amounting to punishment that Bell requires), cert. denied, 520 U.S. 1030 (1997); Williams v. Dehay, 81 F.3d 153, 1996 WL 128422 (4th Cir. 1996)[Table](affirming summary judgment on a pretrial detainee's excessive force claim where the plaintiff showed no more than de minimis injury).  Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis.  See Norman, 25 F.3d at 1262-63.  With only de minimis physical

injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4. The Fourth Circuit explained:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be 'of a sort repugnant to the conscience of mankind,' and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff fails to show that his Fourteenth Amendment rights were violated because any injuries received were de minimis. He has not alleged any injury as a result of the use of the taser. Thus, any use of force by Defendants was de minimis. See, e.g., Norman, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de minimis force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024; Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order of the inmate out of his cell and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell

12

cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was de minimis force); Crow v. Leach, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force); Jackson v. Hurley, 1993 WL 515688 (N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. February 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F. Supp. 148, 150 (D.Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); Candelaria v. Couglin, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992)(fist pushed against neck of inmate causing him to lose his breath was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992)[Table]; Neal v. Miller, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); Ramos v. Hicks, 1988 WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force).

Even if Plaintiff could show he suffered more than de minimis injuries, he fails to show that the use of the taser[6] amounted to punishment in violation of the Fourteenth Amendment. "In

---

[6]Courts have held that officers may use a taser devise in various contexts to subdue a belligerent or unruly arrestee or inmate. See Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. (continued...)

determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), cert. denied, 414 U.S. 1033 (1973); see also United States v. Cobb, supra; and Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1299-1300 (E.D.N.C. 1989).

In this case, analysis of these factors fails to show that the use of force amounted to punishment.  First, force was necessary to gain control of Plaintiff who admittedly "snatched" medications off the nurse's cart and ran away.  Second, Walker's actions in using the taser appears to be an appropriate use of force because of the need to gain control over Plaintiff.  There was a threat reasonably perceived by Defendants because Plaintiff disobeyed orders and had taken another inmate's medication.  Third, as discussed above, there is no indication that Plaintiff suffered anything more than de minimis injury from the incident.  Finally, Defendants' actions appear to have been a good-faith effort to restore order and protect Plaintiff from the danger of the medication.

3.     Living Conditions

---

[6](...continued)
2004) (holding that a "single use of the taser gun causing a one-time shocking" against a "hostile, belligerent, and uncooperative" arrestee in order to effectuate the arrest was not excessive force in the totality of the circumstances); Jasper v. Thalacker, 999 F.2d 353, 354 (8th Cir. 1993) (using a stun gun to subdue an unruly inmate did not violate Eighth Amendment where plaintiff failed to prove that the officers used the stun gun sadistically or maliciously to cause harm); Caldwell v. Moore, 968 F.2d 595, 599-602 (6th Cir. 1992) (holding that use of a taser was not a per se violation of the Eighth Amendment if use of the taser gun is necessary to avoid using greater force and the use is not with the malicious intent to inflict harm).

Plaintiff appears to allege that he was subjected to unconstitutional conditions of confinement because he was placed in a cold, stripped cell for seven days without a mattress or suicide blanket. Defendants Middleton, Rooney, and Walker contend that Plaintiff fails to show that he suffered an objectively serious deprivation. Middleton states that after the pill incident, Plaintiff was taken to a holding cell where he was dressed in a suicide gown and blanket. She states that while housed in the cell, Plaintiff was given adequate amounts of food and water. Middleton Aff.

Allegations of deprivations of pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

(Citations omitted). However, the due process rights of detainees are at least coextensive with Eighth Amendment rights of convicted prisoners, and perhaps greater. Whisenant v. Yuam, 739 F.2d 160 (4th Cir. 1984); Loe v. Armistead, 582 F.2d 1291, 1292 (4th Cir. 1978).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Thus, it must be determined whether the conditions and/or treatment received by a plaintiff amounted to punishment. Absent a showing of expressed intent to punish on the part of correctional officials, the determination whether a particular condition or restriction is punishment generally

turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose.  <u>Bell</u>, 441 U.S. at 538.

Plaintiff fails to show that he received anything more than de minimis injuries as a result of his living conditions at GCDC.  A de minimis injury does not violate the Fourteenth Amendment. <u>See</u> <u>Ingraham</u>, 430 U.S. at 674 ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); <u>see also</u> <u>Riley v. Dorton</u>, 115 F.3d 1159, 1167-1168 (4th Cir. 1997)(en banc)(any injury that the plaintiff suffered as a result of the alleged use of excessive force against him must have been de minimis at best because the plaintiff saw medical personnel on numerous occasions for various injuries and never mentioned the alleged constitutional violation as the source of any of his injuries or complaints), <u>cert.</u> <u>denied</u>, 520 U.S. 1030 (1997); <u>Westmoreland v. Brown</u>, 883 F. Supp. 67, 76 (E.D.Va. 1995)("a particular condition constitutes punishment only where it causes physical or mental injury").

4.     <u>Grievances</u>

In his memoranda in opposition to summary judgment, Plaintiff appears to assert that his grievances were not properly processed.  The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." <u>Adams v. Rice</u>, 40 F.3d at 75.  Even assuming that Defendants violated GCDC grievance procedures, such actions do not state a claim which is actionable under § 1983.  <u>See</u> <u>Brown v. Dodson</u>, 863 F. Supp. 284 (W.D.Va. 1994).  Further, allegations that GCDC Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations.  <u>See</u> <u>United States v. Caceres</u>, 440 U.S. 741 (1978); <u>see also</u> <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's

failure to abide by that law is not a federal due process issue); <u>Keeler v. Pea</u>, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

     5.    <u>Immunity</u>

        Defendants Middleton, Rooney, and Walker contend that they are entitled to qualified immunity. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants Middleton, Rooney, or Walker violated his established constitutional or statutory rights. Therefore, Defendants Middleton, Rooney, and Walker are entitled to qualified immunity in their individual capacities.

17

6.    <u>State Law Claims</u>

It is unclear whether Plaintiff is attempting to assert claims under South Carolina law. As Plaintiff fails to show that Defendants violated his rights under federal law (as discussed above), only potential state law claims remain.  Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed.

<u>MOTION TO DISMISS</u>

On August 8, 2006 (Doc. 26), Hudson filed an answer in which she asserted that this action should be dismissed pursuant to Federal Rules 12(b)(2), 12(b)(4), and 12(b)(5) due to insufficiency of process upon her, insufficiency of service of process upon her, and lack of jurisdiction over her. Specifically, Hudson contends that this action should be dismissed pursuant to Rule 12(b)(5) because she was not timely served pursuant to Rule 4(m) and Plaintiff has not shown good cause in not timely serving Hudson.  On June 7, 2006, the summons and complaint (addressed to Hudson at GCDC) was accepted by Sergeant Luke Lark at GCDC.  <u>See</u> Doc. 23 (Return of Service).  In his memorandum in opposition to Defendant Hudson's motion, Plaintiff does not dispute that Hudson was not properly served,[7] but claims that the motion to dismiss is untimely because it was made after Defendant Hudson filed an answer.[8]

When a defendant challenges the manner or sufficiency of service of process, "[t]he plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4." <u>Elkins v. Broome</u>, 213 F.R.D. 273, 275

---

[7]Hudson does not appear to be an employee of GCDC.  As noted by Middleton, Southeastern Service Group, Inc., provides medical services at SCDC.  Middleton Aff.

[8]Rule 12(b) provides that "[a] motion making any of these defenses shall be made before pleading if a further pleading is permitted."  Fed. R. Civ. P. 12(b).

(M.D.N.C.2003) (citing Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F.Supp. 519, 526 (M.D.N.C.1996)).  Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction are technically untimely where they postdate the filing of an answer.  See E-Z Bowz, L.L.C. v. Professional Prod. Research Co., Inc., No. 00 Civ. 8670, 2003 WL 22064259, at *4 n. 2 (S.D.N.Y. Sept. 05, 2003); and Saldanha v. Baidyaroy, No. 91 Civ. 6413, 1992 WL 147669, at *2-3 (S.D.N.Y. June 15, 1992).

In the present case, Hudson moved for Rule 12(b)(2) dismissal after serving her answer.  Her motion would thus seem facially untimely.  Federal courts, however, will generally make an exception to the above rule, and deem a Rule 12(b)(2) motion timely, if the defendant/movant's previously-filed answer expressly includes the lack of personal jurisdiction as an affirmative defense. See id.; see also Allianz Ins. Co. v. Otero, 2003 WL 262335, at *3 (S.D.N.Y. Jan. 30, 2003) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1361, at 444-46 (2d. ed.1990); and Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd., 64 F.Supp.2d 448, 449 n. 1 (E.D.Pa.1999)).

It is recommended that Defendant Hudson's motion be deemed timely as her answer expressly included the defense of lack of personal jurisdiction.  Plaintiff has not disputed that Hudson was not served, but appears to now claim that he has shown good cause under Federal Rule 4(m) for not timely serving Hudson.  He states:

> Plaintiff made inquiries to the court on 6-16-06 (letter attached to original) as to the status of [H]udson and whether or not she had been served officially.  Plaintiff stated in letter that he had rec[ei]ved nothing notifying him that defendant [H]udson had been officially served or requested an enlargement of time.

Review of the file in this action reveals no such letter and the letter is not attached to Plaintiff's response in opposition to Hudson's motion to dismiss.

Federal Rule of Civil Procedure 4(m) provides in part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time....

Further, Local Rule 4.01, DSC provides:

> In the event a pleading asserting a claim is not served on each party against whom a claim is asserted within one hundred twenty (120) days after filing of the pleading, the party asserting a claim shall advise in writing the Court and all parties previously served at the expiration of said one hundred twenty-day (120) period of the identity of the party not served and why service has not been effected.

Here, Plaintiff was on notice  was on notice of possible service problem in Hudson's answer (August 8, 2006), but did not submit any materials asking for an extension of time or that Hudson be served at a different address.  Although a pro se litigant who has provided the United States Marshal with sufficient service information is entitled to rely on the Marshal to serve the complaint in a timely manner, See Romandette v. Weetabix Co., Inc., 807 F.2d 309 (2d Cir.1986), it appears here that Plaintiff did not provide a proper address for Hudson.  She has not provided another address for service.  A plaintiff may use discovery devices, see generally Rules 26 through 37, Fed. R. Civ. P., to try to obtain information necessary to serve a defendant.  It is then the plaintiff's obligation to notify the United States Marshal of the address and provide completed forms (USM-285) for service.  Defendant Hudson's motion to dismiss should be granted because Plaintiff has not shown that Hudson was properly served.

<u>CONCLUSION</u>

Based upon review of the record, it is recommended that Defendant Dr. Gordineer's motion for summary judgment (Doc. 20) be granted; the motion for summary judgment of Defendants

Middleton, Rooney, and Walker (Doc. 39) be granted; and Defendant Hudson's motion to dismiss

(Doc. 51) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

February 20, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).